IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:12-CV-195-GCM-DCK

| KAY BRIGGS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
|  | ) |  |
| CAROLYN W. COLVIN,[1] | ) |  |
| Acting Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Judgment On The Pleadings" (Document No. 12) and Defendant's "Motion For Order Affirming The Commissioner's Decision" (Document No. 17). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Judgment On The Pleadings" be <u>denied</u>; that Defendant's "Motion For Order Affirming The Commissioner's Decision" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

**I.     BACKGROUND**

Plaintiff Kay M. Briggs ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On November 5, 2007, Plaintiff filed an application for supplemental security income under Title

---

[1] Carolyn W. Colvin is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq.*, alleging an inability to work due to a disabling condition beginning April 15, 2002. (Transcript of the Record of Proceedings ("Tr.") 21). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on July 3, 2008, and again after reconsideration on February 6, 2009. (Tr. 21, 76, 80). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We realize that your condition keeps you from doing some types of work, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 80).

Plaintiff filed a timely written request for a hearing on April 7, 2009. (Tr. 21, 88-90). On December 8, 2009, Administrative Law Judge John L. McFadyen (the "ALJ"), held a hearing in which Plaintiff appeared without counsel and confirmed that she wished to proceed without an attorney representative. (Tr.35-41). The ALJ continued the hearing to allow Plaintiff to undergo a psychological exam with testing. (Tr. 39). He also informed Plaintiff that she could obtain an attorney during the interim, but that the hearing would not be continued again. (Tr. 39). The second hearing was held on May 13, 2010. (Tr. 42-54). Plaintiff failed to appear at this hearing, but was represented by Holly Fairbairn, an attorney. (Tr. 21, 42-54). In addition, Dr. Thomas Schacht[2] and Dr. Theron Blickenstaff, impartial medical experts, and Kathleen Robbins, an impartial vocational expert ("VE"), appeared and testified at the hearing. (Tr. 21, 45-54). At the

---

[2] Dr. Schact's name was transcribed phonetically as "Dr. Shod." (Tr. 44).

conclusion of the hearing, the ALJ requested that Ms. Fairbairn inform him why Plaintiff did not attend the hearing, which she agreed to do, although the record does not indicate any correspondence regarding her absence.[3] (Tr. 53). A third hearing was held before the ALJ on August 17, 2010, apparently to give Plaintiff an additional opportunity to testify. (Tr. 21, 55-73). Plaintiff was again represented by Ms. Fairbairn at the third hearing. (Tr. 57).

The ALJ issued an unfavorable decision on October 1, 2010, denying Plaintiff's claim. (Tr. 18-29). Plaintiff filed a request for review of the ALJ's decision on November 30, 2010, which was denied by the Appeals Council on June 7, 2012. (Tr. 1-3). The October 1, 2010 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on August 1, 2012. (Document No. 1). The Court's "Pretrial Scheduling Order" (Document No. 9) was issued on November 7, 2012, and set deadlines for each party to file a "Motion for Summary Judgment and Supporting Memorandum of Law." Plaintiff's "Motion For Judgment On The Pleadings" (Document No. 12) and "Plaintiff's Memorandum In Support Of Motion For Judgment On The Pleadings" (Document No. 13) were filed February 6, 2013; and Defendant's "Motion For Order Affirming The Commissioner's Decision" (Document No. 17) and "Memorandum In Support Of The Commissioner's Decision" (Document No. 18) were filed April 24, 2013. On June 24, 2013, the undersigned was assigned to this case as the referral magistrate judge. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is appropriate.

---

[3] The transcript of the third hearing suggests that Plaintiff missed the second hearing on May 13, 2010, due to her granddaughter needing surgery. (Tr. 61-62).

3

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between November 5, 2007, the date the application was filed, and the date of the ALJ's decision, October 1, 2010.[4] (Tr. 21). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from November 5, 2007, through the date of his decision, October 1, 2010. (Tr. 28-29).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

---

[4] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fourth step that Plaintiff was not disabled. (Tr. 27). In addition, the ALJ made alternative findings at step five, also concluding Plaintiff was not disabled. (Tr. 27-28).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since November 5, 2007, the alleged disability onset date. (Tr. 23). At the second step, the ALJ found that back pain, carpal tunnel syndrome, depression, anxiety, and high borderline IQ, were severe impairments. (Tr. 23).[5] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 25).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform "simple repetitive [tasks] with at least a high borderline IQ at the full range of light work." (Tr. 26). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p." Id. The ALJ further opined that "he considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." Id.

At the fourth step, the ALJ found that Plaintiff could perform past relevant work as a cashier/stocker, thus finding Plaintiff was not disabled. (Tr. 27). The ALJ alternatively continued to the fifth and final step and further concluded, based on the testimony of a vocational expert and "considering the claimant's age, education, work experience, and residual functional

---

[5] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

6

capacity," that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 28). Specifically, the vocational expert testified that according to the factors given by the ALJ, occupations Plaintiff could perform included cashier, cafeteria attendant, and maid/housecleaning. (Tr. 28). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between November 5, 2007, and the date of his decision, October 1, 2010. (Tr. 28).

Plaintiff on appeal to this Court makes the following assignments of error: (1) that the ALJ erred in his evaluation of the psychological consultative evaluations; (2) that the ALJ did not account for Plaintiff's carpal tunnel syndrome in his RFC assessment; and (3) that the ALJ's credibility assessment is not supported by substantial evidence. (Document No. 13, p.1). The undersigned will discuss each of these contentions in turn.

A. **Evaluation of Medical Opinions**

In her first assignment of error, Plaintiff argues that the ALJ erred in his evaluation of the medical opinions of Dr. Zeisz and Dr. Pardoll and thus violated 20 C.F.R. § 404.1527. (Document No. 13, pp.13-14). Plaintiff argues that the ALJ was required to consider all medical opinions and explain any conflicts with his own opinions. (Document No. 13, p.13) (citing 20 C.F.R. § 404.1527, SSR 96-8p). According to Plaintiff, the ALJ did not mention Dr. Zeisz's opinions at all, nor did he properly weigh Dr. Pardoll's opinions. (Document No. 13, pp.13-14). Plaintiff further argues that although both of these opinions were inconsistent with the ALJ's findings, the ALJ failed to explain the inconsistencies. (Document No. 13, pp.13-14).

Defendant contends there was no error for several reasons, and the undersigned is persuaded by these arguments. (Document No. 18, pp.5-8). Regarding Dr. Pardoll, Defendant first argues that his opinions were considered because the ALJ discussed Dr. Schact's opinions,

which addressed Dr. Pardoll's opinions. (Document No. 18, pp.6-7) (citing Tr. 23-24, 27). Defendant correctly points out that both Dr. Pardoll and Dr. Schact's opinions were referenced in the ALJ's opinion. (Document No. 18, p.6) (citing Tr. 24, 27). Specifically, Dr. Schacht stated that if Dr. Pardoll's examination findings were permanent, Plaintiff would be limited to simple tasks. (Tr. 24). The ALJ limited Plaintiff to simple tasks, and therefore, it appears that Dr. Pardoll's examination was considered, or is at least consistent with the ALJ's findings. Further, Dr. Pardoll's specific opinions cited in "Plaintiff's Memorandum . . ." do not conflict with the ALJ's RFC finding. (Document No. 13, p.14). Dr. Pardoll opined that Plaintiff's psychological and social functioning were impaired and that her "test scores suggest she is having a difficult time concentrating and exerting mental control." (Document No. 13, p.14) (citing Tr. 493-99). These findings are not incompatible with performance of simple, repetitive tasks and therefore the ALJ did not fail to explain any inconsistencies, as Plaintiff alleges.

Finally, Defendant contends that several of Dr. Pardoll's opinions cited by Plaintiff are actually "administrative findings reserved for the Commissioner" and therefore not entitled to any special significance. (Document No. 18, p.8) (quoting Pascoe v. Astrue, 1:11cv226-MR-DLH, 2012 WL 3528054, at *3 (W.D.N.C. July 23, 2012), adopted by 2012 WL 3527933, at *1 (W.D.N.C. Aug. 14, 2012)). As the regulations explain, "[o]pinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case . . . ." 20 C.F.R. § 404.1527(d)(3). The undersigned agrees that Dr. Pardoll's opinion regarding Plaintiff's work environment productivity is not a medical opinion and does not require special weight or explanation. (Document No. 13, p.14); see 20 C.F.R. § 404.1527(d)(3).

The undersigned is likewise not persuaded that any error occurred in the ALJ's consideration of Dr. Zeisz's opinions. First, Defendant correctly notes that contrary to Plaintiff's assertions, the ALJ did cite to Dr. Zeisz in his opinion. (Document No. 18, p.6); see also (Tr. 27 (referencing and quoting Tr. 368-373)). Therefore, Plaintiff's argument that the ALJ erred because he did not mention Dr. Zeisz's examination or opinion in his decision is not only without merit, but is misleading to the Court. See (Document No. 13, p.13) and (Tr. 27 (referencing and quoting Tr. 368-373)).

Defendant argues that Dr. Zeisz's opinions were given proper consideration because the ALJ relied on medical opinions that cited Dr. Zeisz. (Document No. 18, p.7) (citing Tr. 27). Dr. Zeisz's evaluations were referenced in the state agency evaluations, which the ALJ found consistent with his own findings. (Tr. 27, 398, 470). Further, it appears Dr. Zeisz's opinion itself was also consistent with the ALJ's findings. (Tr. 368-373). As Plaintiff points out, Dr. Zeisz opined that Plaintiff would likely suffer some cognitive challenges in remembering vital information and following directions, and that it was inconclusive whether she could keep up pace and persistence in past work settings. (Document No. 13, p.13); see also (Tr. 373). These findings do not conflict with the ALJ's determination that Plaintiff could perform simple, repetitive tasks. (Tr. 26).

Plaintiff also references Dr. Zeisz's opinions that Plaintiff would likely be viewed as a liability by future employers and that Plaintiff did not appear to have the resources to gain and maintain employment. (Document No. 13, pp.13-14) (Tr. 373). However, the undersigned agrees with Defendant that these opinions are not medical opinions, and therefore do not merit special significance or explanation. See 20 C.F.R. § 404.1527(d)(3).

Based on the foregoing, the undersigned is not persuaded that the ALJ erred in his consideration of the medical opinions of Dr. Pardoll or Dr. Zeisz.

B.     **Carpel Tunnel Syndrome**

Next, Plaintiff challenges the ALJ's RFC finding on the basis that, despite finding Plaintiff's Carpel Tunnel Syndrome ("CTS") was a severe impairment, the ALJ did not provide any limitations due to this impairment in Plaintiff's RFC. (Document No. 13, p.14). Plaintiff argues that she quit her job and applied for disability because of her CTS, which is well documented in the record. (Document No. 13, p.14). According to Plaintiff, the ALJ should have explicitly restricted Plaintiff's fingering and handling in her RFC and thus remand is required. (Document No. 13, p.15).

Defendant acknowledges that the ALJ did not include such a limitation in his RFC finding, but argues the omission is a harmless error. (Document No. 18, pp.8-9). Defendant points out that the VE specified jobs that a hypothetical individual with the restrictions given by Dr. Blickenstaff could perform. (Document No. 18, p.9). Dr. Blickenstaff stated that Plaintiff's CTS precluded "highly repetitive use of [her] hands" and therefore, according to Defendant, the VE's response included Plaintiff's CTS. (Document No. 18, p.9). Defendant further argues that because the ALJ's findings were based on the VE testimony, Plaintiff's CTS was included in the RFC finding. (Document No. 18, p.9). And, Defendant argues, Plaintiff cannot prove any harm resulted from not explicitly including such a limitation, as required for remand. (Document No.18, p.9).

The undersigned is satisfied that the ALJ sufficiently considered Plaintiff's CTS. Although he did not explicitly include CTS in his RFC determination, the ALJ's findings included limitations due to, or at least consistent with, this impairment. (Tr. 27-28); <u>see also</u>

(Tr. 47-48). The ALJ's inclusion of additional step five analysis is instructive in assessing his step four analysis and in determining if any error was outcome determinative. (Tr. 27-28).

As the ALJ explained within his step five analysis, the VE was asked to consider an individual with Plaintiff's IQ, limited to simple repetitive work, and under the restrictions given by Dr. Blickenstaff, which included avoidance of "strenuous and highly repetitive use of the hands." (Tr. 27-28, 47-48). The VE answered that such an individual could perform work as a cashier. (Tr. 28, 48-49). At step four of the analysis, the ALJ found Plaintiff could perform her past relevant work as a cashier, resulting in a finding of "not disabled." (Tr. 27). Because the ALJ's findings are consistent with the VE's opinions, the step four analysis appears to include a CTS limitation and would not be altered by requiring an explicit statement of such limitation.

Further, because the ALJ alternatively completed the step five analysis, the undersigned can conclude that Plaintiff would not be found disabled, even if the ALJ had not sufficiently considered Plaintiff's CTS at step four and needed to continue to step five. (Tr. 27-28). At step five, the ALJ would determine if Plaintiff could make an adjustment to perform other available work. The VE identified numerous jobs that could be performed by someone with Plaintiff's limitations, including the limited use of her hands. (Tr. 28, 48-49). If the ALJ were required to continue to step five of the analysis, the number of jobs available to Plaintiff would still result in a finding of "not disabled."

In summary, remanding for the ALJ to explicitly include avoidance of "strenuous and highly repetitive use of the hands" in Plaintiff's RFC would result in the same outcome at step four, or alternatively, step five of the analysis.

### C. Credibility Analysis

Finally, Plaintiff argues that the ALJ's credibility analysis is not supported by substantial evidence. (Document No. 13, p.15). Plaintiff challenges specific ALJ findings, such as Plaintiff being physically functional and that her medical treatment has been conservative and effective, on the basis that they are not supported by substantial evidence in the case record. (Document No. 13, pp.15-16). Plaintiff argues that the ALJ is required to "articulate explicit and adequate reasons" for discrediting subjective testimony but failed to do so. (Document No. 13, p.15) (citing Hammond v. Heckler, 765 F.2d 723 (4th Cir. 1985)).

Defendant contends no error occurred because the ALJ completed the Fourth Circuit's two-step Craig analysis for credibility evaluations. (Document No. 18, pp.9-10) (citing Craig v. Chater, 75 F.3d 585, 594-95 (4th Cir. 1996)). Step one requires an ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could be reasonably expected to produce the actual pain . . . alleged . . . ." (Document No. 18, p.10) (quoting Craig, 76 F.3d at 594). According to Defendant, the ALJ completed this step. (Document No. 18, p.10) (citing Tr. 26). The second step requires an evaluation of the alleged symptoms' intensity and persistence and the extent they limit the claimant's ability to work. (Document No. 10, p.18) (citing Craig, 76 F.3d at 594). Defendant argues that the ALJ completed this step and his findings are supported by evidence, such as Plaintiff doing activities that "are not limited to the extent one would expect, given the complaints . . . ." (Document No. 18, p.11) (quoting Tr. 27). Defendant concludes, stating it is the "province of the ALJ, not the reviewing court, to make credibility determinations . . . ." (Document No. 18, pp.15-16) (citing Hays, 907 F.2d at 1456).

The undersigned is persuaded that the ALJ's credibility analysis is sufficient for several reasons. First, many of Plaintiff's purported challenges reference evidence supporting the ALJ's findings. (Document No. 13, pp.15-16). For example, Plaintiff states, "[The ALJ] claims that Ms. Briggs was physically functional because she took care of her grandchildren." (Document No. 13, p.15) (citing Tr. 27). Although Plaintiff argues this evidence does not prove physical functioning (because "[she] receives help from 4 family members"), Plaintiff has simply pointed out the existence of conflicting evidence. (Document No. 13, p.15). Many of Plaintiff's other challenges are likewise based on conflicting evidence in the record. (Document No. 13, pp.15-16). The undersigned cannot reweigh evidence to resolve conflicts when the ALJ already did so and his findings are supported by substantial evidence. See Hays, 907 F.2d at 1456.

Second, the undersigned finds Defendant's analysis and application of Craig to be accurate and persuasive. Craig lays out a two-step process for making credibility determinations, which first requires "objective medical evidence showing the existence of impairments . . . which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). The ALJ completed this step when he concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 26). The second step requires an evaluation of the intensity and persistence of the claimant's pain and the extent to which it affects her ability to work. Craig, 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(c)(1), 404.1529(c)(1)).

The ALJ completed this evaluation and his findings are supported by substantial evidence. (Tr. 26-27). As the ALJ noted, Plaintiff reported activities, such as doing chores, shopping, and socializing, "that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 27). The ALJ also referenced

13

Plaintiff's daughter's statements about various activities, both mental and physical, that Plaintiff is capable of performing. (Tr. 27). Further, the ALJ found that Plaintiff's "treatment has been routine and/or conservative . . . [and] effective in controlling the claimant's symptoms." (Tr. 27). Although the ALJ does not cite the record to support this claim, substantial evidence for it exists. In fact, "Plaintiff's Memorandum . . ." references several tests that returned normal results or treatments that controlled symptoms. See (Document No. 13, pp.2-11). These factors support the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (Tr. 26-27). Overall, the ALJ's credibility determination is well supported in his opinion.

## IV.  CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Moreover, the undersigned is persuaded that the ALJ's work on this case – holding three (3) hearings, and including the additional analysis under step 5 – was especially thorough. Based on the foregoing, the undersigned will recommend that the Commissioner's decision be affirmed.

## V.  RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Judgment On The Pleadings" (Document No. 12) be **DENIED**; Defendant's "Motion For Order Affirming The Commissioner's Decision" (Document No. 17) be **GRANTED**;  and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: August 5, 2013

_____
David C. Keesler
United States Magistrate Judge